# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROBERT A. TURNBULL,

        Plaintiff,

v.

O'REILLY RANCILIO P.C.,

        Defendant.

Case No. 2:16-cv-11971-GAD-MKM
Hon. Gershwin A. Drain

---

Andrew L. Campbell (P64391)
Attorney for Plaintiff
1000 Beach Street, Suite B
Flint, MI 48502
(810) 232-4344
michiganbk@gmail.com

O'REILLY RANCILIO P.C.
Craig S. Schoenherr, Sr. (P32245)
Eric C. Turnbull (P76382)
Attorneys for Defendant
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
(586) 726-1000
cschoenherr@orlaw.com
eturnbull@orlaw.com

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OR ALTERNATIVELY FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(c)

Plaintiff Robert A.J. Turnbull, III hereby files the response to Defendant's Motion to Dismiss or Motion for Summary Judgment and relies upon the facts and arguments as set forth in the accompanying Brief in Support. Plaintiff requests leave to file the First Amended Complaint and requests that this Court deny Defendant's requested relief.

Dated: August 30, 2016

        /s/Andrew L. Campbell
        Andrew L. Campbell
        Attorney for Plaintiff
        1000 Beach St, Suite B
        Flint, MI 48502
        (810) 232-4344
        (P64391)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROBERT A. TURNBULL,

                Plaintiff,

v.

O'REILLY RANCILIO P.C.,

                Defendant.

Case No. 2:16-cv-11971-GAD-MKM
Hon. Gershwin A. Drain

---

| | |
|---|---|
| Andrew L. Campbell (P64391)<br>Attorney for Plaintiff<br>1000 Beach Street, Suite B<br>Flint, MI 48502<br>(810) 232-4344<br>michiganbk@gmail.com | O'REILLY RANCILIO P.C.<br>Craig S. Schoenherr, Sr. (P32245)<br>Eric C. Turnbull (P76382)<br>Attorneys for Defendant<br>12900 Hall Road, Suite 350<br>Sterling Heights, MI 48313<br>(586) 726-1000<br>cschoenherr@orlaw.com<br>eturnbull@orlaw.com |

---

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

CONTROLLING AUTHORITY……………………………………………………ii

INDEX OF AUTHORITIES…………………………………………………iii-iv

STATEMENT OF QUESTIONS PRESENTED………………………………......v

INDEX OF EXHIBITS……………………………………………………vi

COUNTER-STATEMENT OF FACTS………………………………………..1

STANDARD OF REVIEW………………………………………………….4

INTRODUCTION……………………………………………………….5

STATUTE OF LIMITATIONS………………………………………   ……....6

BONA FIDE ERROR………………………………………………..14

COLLECTION PRACTICES ACT………………………………………22

MOTION TO AMEND…………………………………………………23

CONCLUSION…………………………………………………………24

RELIEF REQUESTED……………………………………………………25

i

i

## CONTROLLING AUTHORITY

This case is controlled by the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et. seq.* and all applicable case law. Additionally, this case is controlled by the Regulation of Collection Practices Act MCL § 445.251 *et. seq.* and all applicable case law.

# INDEX OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Adkins v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 2:11-cv-00619,
2012 WL 604249, at *4 (S.D. Ohio Feb. 24, 2012)....................................9

*Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995)....................11

*Chicago Title Ins. Corp. v. Magnunson*, 487 F.3d 985, 995 (6th Cir. 2007).......4

*Duncan v. Leeds*, 742 F.2d 989, 991 (6th Cir.1984)..................................4

*Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1515 (9th Cir. 1994).........8

*Golem v. Palisades Acquisition XVI, L.L.C.*, Dist. Court, ND Ohio 2011..........10

*Jalapeno Prop. Mgmt., L.L.C. v. Dukas*, 265 F.3d 506, 515 (6th Cir. 2001)......11

*Jerman v. Carlisle, McNellie, Rini, Kramer*, 130 S. Ct. 1605, 1614 (U.S. 2010)..16

*Kistner v. Law Offices of Michael P. Margelefsky, L.L.C.,*...........................6
518 F. 3d. 433, 438 (6th Cir. 2008)

*Langendorfer v. Kaufman*, 2011 U.S. Dist. LEXIS 94100, ..........................13-14
2011 WL 3682775 (S.D. Ohio Aug. 23, 2011)

*Mooneyham v. GLA Collection Co., 2015 U.S. Dist. LEXIS 73494................13*

*Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)..........................23

*New England Health Care Pension v. Ernst & Young,*..............................4
336 F.3d 495 Court of Appeals, (6th Cir. 2003

*Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir.1975)...................4

*Pace v. Digugerelimo*, 544 U.S. 408, 418 (2005).....................................12

*Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir.1989)...............12

*Purnell v. Arrow Financial Services, LLC*, No. 07-1903, 2008 U.S. App. ........14
LEXIS 25488 *10 (6th Cir. December 16, 2008)

*Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002)................12

*Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445 ……………7
(5th Cir. 2013)

*Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 258-59 ………………7
(6th Cir. 2014)

*Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337 (1969)…………..10

*State Farm Life Ins. Co. v. Swift*, 129 F.3d 792, 798 (5th Cir. 1997………………6

*Tyler v. DH Capital Management, Inc*., 736 F. 3d 455, (6th Cir. 2013)………….6

**Statutes**

FDCPA 15 U.S.C. § 1692……………………………………………………5,8,9,10,16

MRCPA 445.251…………………………………………………………………22-23

## STATEMENT OF QUESTIONS PRESENTED

1. Has Plaintiff's complaint stated a claim upon which relief can be granted?

        Plaintiff: Yes
        Defendant: No

2. Has Plaintiff filed his lawsuit for claimed violations of the FDCPA within the applicable period of limitations?

        Plaintiff: Yes
        Defendant: No

3. Is Defendant entitled to summary judgment pursuant to the bona fide error defense?

        Plaintiff: No
        Defendant: Yes

4. Has Defendant made false representations to Plaintiff?

        Plaintiff: Yes
        Defendant: No

## V. INDEX OF EXHIBITS

| Exhibit A | - | PCA Manual Cover page and second page |
| Exhibit B | - | Application of Writ of Garnishment July 21, 2011 |
| Exhibit C | - | Judgment Lien filed in Genesee County |
| Exhibit D | - | Writ of Garnishment October 10, 2014 |
| Exhibit E | - | Writ of Garnishment June 9, 2015 |
| Exhibit F | - | Affidavit of Robert A.J. Turnbull, III |
| Exhibit G | - | Affidavit of Robert A.J. Turnbull, Jr. |
| Exhibit H | - | Affidavit of Brenda Turnbull |
| Exhibit I | - | Charter Oaks Lease Agreement |
| Exhibit J | - | Portion of Transunion Credit Report |
| Exhibit K | - | Letter from Plaintiff's Employer / Time records June 2011 |
| Exhibit L | - | Demand Letter |
| Exhibit M | - | Two letters/affidavits from Plaintiff's landlords |
| Exhibit N | - | Email response to Demand Letter from Defendant |
| Exhibit O | - | PCA Manual (26-269) |
| Exhibit P | - | Litigation Guide |
| Exhibit Q | - | Definition of Wilful |
| Exhibit R | - | First Amended Complaint |
| Exhibit S | - | Case Law |

## COUNTER-STATEMENT OF FACTS

The underlying acts giving rise to plaintiff's allegations is based upon a student loan collection matter. Defendant is under a contract with the United States of America for student loan collections. The U.S. Department of Education (the "DOE") mandates that private collection agencies ("PCA's") follow the standards found in the PCA Manual as well as the RFQ and statement of work. (Ex. A). Defendant received a litigation package from the DOE that included a Claims Collection Litigation Report ("CCLR"), Certificate of Indebtedness, Credit Bureau Report ("CBR"), Payment History, Original Note, and Summary of Collection Actions Taken. (Def. Ex. 1, p. 6 of 12, ¶59).

The CCLR indicated plaintiff's primary name was "Robert A. Turnbull" who owned property and lived at 2802 Plainfield Avenue, Flint, MI 48504. (Def. Ex. 1, p.1-6,¶5, ¶24,¶51).The CBR indicated that plaintiff's primary name was "Robert A.J. Turnbull, 3" and that his current address as of "10/31/08" was "1701 N. Ventura Lane Tempe, AZ 85281". (Def. Ex. 1, p.9-10). The CBR also indicated that plaintiff's former address as of April 2006 was 2802 Plainfield Avenue Flint, MI 48506. (*Id.* p.9). In response to the debt validation letter sent to plaintiff's father's address, plaintiff called defendant's firm in May 2011 from Wisconsin leaving a phone number. (Def. Ex.3). Defendant filed suit on May 26, 2011 in the United States District Court for the Eastern District of Michigan.

Defendant issued a Request for Change of Address or Box Holder Information Needed with the name as "Robert A. Turnbull" and not "Robert A. Turnbull, III." (Def. Ex. 4). Defendant then conducted employment searches to issue Writs of Garnishment. Plaintiff was sued by the United States of America for a student loan debt ("the debt")

1

11-12333 ("the lawsuit") in June 2011. *Id.* ¶4. Defendant filed a proof of servicing alleging that plaintiff was served at 10311 Charter Oaks Dr. Davison, MI 48423 on June 6, 2011. Defendant then obtained default judgment against plaintiff.

On July 27, 2011, Defendant filed an Application for Writ of Garnishment against the Michigan Treasury indicating plaintiff's address was 10311 Charter Oaks Dr., Davison, MI 48423. (Ex.B). On November 16, 2011, Defendant filed a judgment lien in the Genesee County register of deeds (Ex.C) against Robert A. Turnbull 10311 Charter Oaks Dr., Davison, MI 48423. On November 4, 2014, defendant served a Writ of Garnishment on plaintiff indicating his address was 4501 N 40th Street, Apt. 202 Phoenix, AZ 85018-3627. (Ex.D). On June 29, 2015, defendant served a Writ of Garnishment on plaintiff indicating his address was 2802 Plainfield Avenue, Flint, MI 48506. (Ex.E).

Defendant conducted TLO searches in 2013 and 2014 (Def. Ex. 6&7) and both searches revealed the name "Robert A. Turnbull, III" and both searches show the Plainfield address was owned by "Robert A. Turnbull, Jr." Neither TLO search nor the CBR report indicate an a.k.a. for plaintiff was ever "Robert A. Turnbull, Jr".

Plaintiff's legal name is Robert A.J. Turnbull, III. (Ex.F, ¶1,2). In June 2015, plaintiff received a letter from his father indicating that his employer (TruGreen) had received a garnishment. *Id.* ¶5. A day or so later he called defendant and asked to speak with the person listed on the garnishment documents. *Id.* ¶6. He spoke with that person and told him that he had never been served a lawsuit and he was never notified of a judgment. *Id.* ¶7. The attorney said that he had a document from a process server indicating plaintiff had been served in Davison Michigan in 2011 and that there were two

vehicles with Wisconsin plates. *Id.* ¶8. Plaintiff told him that he was working in Wisconsin at the time he was supposedly served in Davison, Michigan and that it would have been impossible for him to have driven two different cars from Wisconsin to Michigan. Id. ¶9. The attorney plaintiff was talking to told him that he had documentation from a court officer and that for all he knew plaintiff could be telling him anything. *Id.* ¶11.

Plaintiff did not visit Charter Oaks apartments again after he moved out in 2009. *Id.* ¶12. Plaintiff did not wait five years to file this action as he did not even know about it until he received the garnishment documents from his father. *Id.* ¶13. When he received the loan money for the debt he had been living in Illinois, not in Michigan. Id. ¶14. Plaintiff does not own and has never owned the property located at 2802 Plainfield Avenue, Flint, MI. *Id.* ¶15. Plaintiff's father and mother own property at 2802 Plainfield Avenue. (Ex C, ¶15, G & H). Plaintiff was never served with the lawsuit in 2011. *Id.* ¶16. Plaintiff did not reside in Davison, Michigan in 2011. *Id.* ¶17. Plaintiff had at one point in time resided at Charter Oaks Apartments in Davison, Michigan. *Id.* ¶18. To the best of plaintiff's knowledge, he lived at the Charter Oaks address from November 5, 2008 until November 30, 2009. (Ex F, ¶19, Ex.I).

Plaintiff moved to Wisconsin at the end of 2009. *Id.* ¶20. In 2011, plaintiff lived in Wisconsin and he worked at a debt collection law firm in Wisconsin. *Id.* ¶21. Plaintiff placed a call to defendant's firm in 2011 in response to a letter forwarded to him by his parents. *Id.* ¶22. Plaintiff's Transunion credit report, pulled in 2015, indicates the places he lived in Wisconsin and indicates the employer he worked for in 2011. (Ex. F, ¶23, Ex. J). Plaintiff had his counsel provide defendant a copy of the letter from his former

employer stating his dates of employment (Ex.K) and a copy of the payroll records (Ex. K). These indicated plaintiff was punched in and working in Wisconsin on the date that the process server claimed plaintiff had been served in Davison, Michigan.

Plaintiff's counsel sent a letter to defendant demanding that the judgment be vacated on August 6, 2015. (Ex.L). Plaintiff has two letters from former landlords in Wisconsin proving he resided there. (Ex. C¶21, Ex.M). Defendant responded with an email to plaintiff's counsel on August 6, 2015. (Ex.N). Defendant finally released the garnishment against plaintiff on August 25, 2015 but did not return the garnished funds. (Dkt. Entry. #20,11-12333). Defendant refused to vacate the judgment until plaintiff's counsel drafted a motion to vacate judgment and sought concurrence from defendant in May 2016. (Dkt. Entry #21, 11-12333). Defendant then stipulated to an order transferring venue to the State of Wisconsin. (Dkt. Entry #25, 11-12333).

## STANDARD OF REVIEW

Plaintiff relies upon defendant's standard of review except as stated below. A motion to dismiss on statute of limitations grounds should be granted "when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief." *Ott v. Midland-Ross Corp.,* 523 F.2d 1367, 1369 (6th Cir.1975), quoted in *Duncan v. Leeds*, 742 F.2d 989, 991 (6th Cir.1984). *New England Health Care Pension v. Ernst & Young*, 336 F.3d 495 Court of Appeals, (6th Cir. 2003).

Fed. R. Civ. P. 56(c) places an affirmative duty on the nonmovant to cite to "particular parts of materials in the record" to establish that a particular fact cannot be supported or is genuinely disputed. Fed. R. Civ. P. 56(c)(1); see *Chicago Title Ins. Corp. v. Magnunson*, 487 F.3d 985, 995 (6th Cir. 2007)

4

## INTRODUCTION

This case is not ripe for summary judgment under any federal court rule because at least one issue of material fact is in dispute. Plaintiff asserts he was not actually served with the student loan collection lawsuit in 2011 and has submitted substantial document in support of this claim. Furthermore, defendant has not met its burden of production to demonstrate its acts constituted bona fide error because it has not shown the procedures, standards, and duties it agreed to follow under its contract with the Department of Education. The affidavit submitted by defendant is simply not accurate in representing the Wisconsin addresses were not known to defendant in 2013 and 2014. Finally, too many exhibits had information redacted including phone numbers, social media information, ages, and social security numbers. Listing the last four of any social security number is permitted and exactly what defendant did in the original action against plaintiff. Thus, it seems strange that now defendant is redacting the full number from the exhibits and pleadings.

Defendant claims that plaintiff has asserted that defendant acted willfully and maliciously but that is not completely true. (Def. Br. p. 3). Plaintiff has claimed that the violations of the Regulation of Collection Practices Act "RCPA" MCL 445.251 et. seq. was willful but that word means intentional and voluntary, not necessarily malicious. Therefore, plaintiff is not asserting that defendant necessarily acted maliciously. Furthermore, defendant has asserted that the fourth issue presented is whether defendant made a knowingly false representation to plaintiff. Plaintiff, however, did not bring any claim under the FDCPA that contains or requires knowledge as an element. The plain language of the FDCPA 15 U.S.C. 1692e(10) states:

5

> A debt collector may not use any <u>false, deceptive, or misleading representation or means</u> in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (10) The use of any <u>false representation</u> or <u>deceptive means</u> to collect or attempt to collect any debt or to obtain information concerning a consumer. (emphasis added).

The acts of defendant could very well have been made without knowledge that they were in fact false. However, by taking those acts, from the perspective of the least sophisticated consumer (not a sophisticated creditor), those representations were misleading or deceptive. *Kistner v. Law Offices of Michael P. Margelefsky, L.L.C.*, 518 F. 3d. 433, 438 (6th Cir. 2008). The perspective of the consequences of a violation of the FDCPA or MRCPA is from the debtor, not the creditor.

## I.   PLAINTIFF'S ACTION IS NOT BARRED BY THE STATUTE OF LIMITATIONS BECAUSE PLAINTIFF DID NOT KNOW OF THE ACTION AND HAD NEVER BEEN SERVED AND BECAUSE A WRIT OF GARNISHMENT IS A LEGAL ACTION AGAINST PLAINTIFF

The Sixth Circuit came close to looking at the issue presented in this matter in *Tyler v. DH Capital Management, Inc.*, 736 F. 3d 455, (6th Cir. 2013). Tyler should be ignored because of Tyler's instruction that claim "accrual for the purposes of § 541[—which defines what property is part of a bankruptcy estate—]is different from accrual for statute-of-limitations purposes." *Id.* at 463 (citing *State Farm Life Ins. Co. v. Swift*, 129 F.3d 792, 798 (5th Cir. 1997)) (A cause of action can accrue for ownership purposes before the statute of limitations for that cause of action has begun to run). Thus, this court should focus on other case law instead.

Defendant is correct in that different courts have dealt with accrual of the FDCPA's statute of limitations in different ways. Defendant, however, cites *Serna* and

6

claims that it applies in this case. (Def. Br. p. 7-8). Plaintiff agrees that *Serna* should

control because plaintiff was never served with debt collection lawsuit by Dustin Miller

on June 6, 2011. Particularly relevant to this analysis is the following exert from *Serna*:

> The Fifth Circuit has also addressed the issue of whether
> service is required for actions brought under § 1692i:
>
> when a debt collector files suit against an alleged debtor in
> contravention of § 1692i(a)(2), no harm immediately
> occurs because the debtor likely has no knowledge of the
> suit and has no need to act. Therefore, tying a violation to
> the mere filing of a complaint does not serve the statute's
> remedial purpose. Upon receiving notice, however, the
> harm is realized because the debtor must then respond in a
> distant forum or risk default. Because the harm of
> responding to a suit in a distant forum arises only after
> receiving notice of that suit, a "violation" does not arise
> under § 1692i(a)(2) until such time as the alleged debtor
> receives notice of the suit. (emphasis added). *Serna v. Law
> Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445 (5th
> Cir. 2013).

Under the discovery rule, an actual injury does not occur until the time that

plaintiff learns of the facts that make up the misrepresentation. Within the fraud context,

Sixth Circuit precedent suggests the discovery rule's applicability to FDCPA

actions. *See Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 258-59 (6th Cir.

2014) ("Tolling doctrines such as . . . the discovery rule exist to address such

situations."). Plaintiff requests the court consider the discovery rule which tolls the statute

of limitations from running until plaintiff receives notice of the suit. Fraud is involved

because the process server drafted and had defendant file a false pleading as plaintiff was

never served.

In the present case, an affidavit (Ex. F) has been submitted by plaintiff indicating

1) he lived in Illinois when he got the loan, 2) lived in Wisconsin when he got sued, and

7

3) he was never served with the 2011 lawsuit. (Ex.F, ¶13,20,22,16,17). Therefore, venue could not have been correct under the mandates of the venue provision under the FDCPA. At an absolute minimum whether he was served or not is an issue of material fact in dispute. Thus, it prohibits this court from ruling under either court rule. Additionally, defendant fails to understand that it was not merely the filing of the lawsuit that constitutes a legal action it was also the filing of the Writ of Garnishment in 2015, within the one-year period, that is actionable. (¶34 of plaintiff's complaint).

A Writ of Garnishment Constitutes Bringing A Legal Action

Plaintiff has asserted that defendant violated the venue provision of the FDCPA, 15 U.S.C. 1692i(a) which states:

> Any debt collector who brings _any_ legal action on a debt against any consumer shall— [when the action is not] to enforce an interest in real property securing the consumer's obligation[,] . . . bring such action only in the judicial district or similar legal entity— (A) in which such consumer signed the contract signed upon; or (B) in which such consumer resides at the commencement of the action. (emphasis added).

Post-judgment enforcement, including a writ of garnishment, may constitute "legal action" as required by the statute. _Fox v. Citicorp Credit Services, Inc.,_ 15 F.3d 1507, 1515 (9th Cir. 1994); _see also, Adkins v. Weltman, Weinberg & Reis Co., L.P.A.,_ No. 2:11-cv-00619, 2012 WL 604249, at *4 (S.D. Ohio Feb. 24, 2012) (holding that an application for a writ of garnishment falls under § 1692i).

The writ of garnishment issued on June 9, 2015 constitutes bringing a legal action as better explained by the logic employed by the _Adkins_ court. The construction of a statute requires a court to start with its plain meaning. Here the FDCPA provides that "a legal action on a debt against a[ ] consumer . . ." must be brought where the consumer

8

resides. 15 U.S.C. § 1692i(a)(2)(A) and (B). To be entitled to that protection, the plain language of the statute requires a plaintiff to prove that (1) the defendant is a debt collector; (2) he is a consumer; (3) defendant brought a legal action; (4) the legal action was on a debt; and (5) the legal action was against the consumer.

Defendant is a debt collector and plaintiff is a consumer. Although the term "legal action" is not defined by the statute, a garnishment proceeding is without doubt a legal action. Next, a plaintiff must prove that the garnishment proceeding was "on a debt." The term "debt" is defined by the statue as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, <u>whether or not such obligation has been reduced to judgment</u>.15 U.S.C. § 1692a (emphasis added).

Here defendant reduced a consumer debt to judgment. The plain meaning of the statutory definition of "debt" is that a consumer debt remains a debt within the meaning of the FDCPA when it is reduced to judgment. Consequently, the garnishment proceeding was "on a debt."

A garnishment action is "against" the consumer who is a judgment debtor because only the judgment creditor and the judgment debtor have any beneficial interest at stake in a garnishment action. The nominal "defendant" in a wage garnishment, the employer-debtor of the employee-judgment debtor, has no claim to the money garnisheed. The employer's only interest is in not becoming liable to pay the wages to both the employee and the employee's judgment creditor. That danger is avoided by paying the wages into the court, which then determines who is entitled to those funds. The garnishment is not against the employer; it is against the employee-judgment debtor. Additionally, the

9

evidence shows that the writ was served upon plaintiff as well. (Dk. Entries #17,18, & 19, 11-12333).

The Due Process Clause of the Fourteenth Amendment to the Constitution of the United States recognizes that obvious fact by requiring the judgment creditor to give notice to the judgment debtor of the garnishment and requiring the issuing court to afford the judgment debtor an opportunity to contest the garnishment. *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337 (1969).

The term "legal action" in § 1692i was referenced by the FTC's Staff Commentary instructing that, "If a judgment is obtained in a forum that satisfies the requirements of this section, it may be enforced in another jurisdiction, because the consumer previously has had the opportunity to defend the original action in a convenient forum." *Golem v. Palisades Acquisition XVI, L.L.C.*, Dist. Court, ND Ohio 2011, referencing *Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act*, 53 FR 50097-02. The present case involves a situation whereby judgment was obtained in a forum that did not satisfy the requirements of the FDCPA so the judgment should not be allowed to be enforced in another jurisdiction.

### Defendant fails to address the other claim under the FDCPA presented in ¶ 34 of Plaintiff's Complaint

Plaintiff stated more than one violation of the FDCPA in his complaint:

> 34. Defendant violated 15 U.S.C. § 1692e(10) when it falsely represented <u>by filing a garnishment that defendant had the right to obtain money from plaintiff in a proceeding which it had no jurisdiction because no service had been obtained</u> and because venue was improper.

The assertion that defendant made a false representation does not require knowledge as a few other sections of the FDCPA require. (See 15 U.S.C. §

10

1692d(a)(2)(3), 1692f(8)). While ¶ 34 does reference improper venue it also asserts that defendant did not have jurisdiction because no service had been obtained. In an abundance of caution, plaintiff will seek to file a First Amended Complaint that separates out these issues because with no service of process, there was no personal jurisdiction acquired by defendant over plaintiff. Thus these are two separate legal claims and issues.

One denial of due process under Rule 60(b)(4) is improper service of process; accordingly, 'if service of process is not proper, the judgment is void, and the court must set aside [the plaintiff's] default judgment.'"(quoting *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 108 (6th Cir. 1995) and *Jalapeno Prop. Mgmt., L.L.C. v. Dukas,* 265 F.3d 506, 515 (6th Cir. 2001)).

That garnishment as a communication would be misleading or deceptive because by its very nature it is asserting that jurisdiction is appropriate and allows the right to seize plaintiff's money through a court process when service was never effectuated. Service of process affords a person due process rights granted by the Constitution. If a person was never served, personal jurisdiction over that person is not acquired by the plaintiff or the court. Thus, the failure to serve constitutes a serious defect no matter how strong the case is that has been filed. If the judgment is void, all other actions taken that rest upon that judgment must also be found to be void.

In this case, plaintiff did not get served and has submitted a number of exhibits in support of that fact. (Ex. F-N). Even defendant was so convinced of that fact that it released the garnishment on August 25, 2015 (but did not return the funds). (Dk. Entry #20, 11-12333). Additionally, the fact that defendant stipulated to change venue should constitute an admission held against defendant. (Dkt. Entry #25, 11-12333).

11

Additionally, plaintiff has provided a copy of part of his Transunion credit report (Ex. J) showing evidence that at least one credit reporting agency had the data to show his place of employment and his residence in Wisconsin prior to the date of alleged service. Furthermore, plaintiff submitted letters and affidavits from past landlords (Ex.M), a letter from his then-employer and pay records (Ex.K) showing he was physically present in the State of Wisconsin on the date he was allegedly served.

Despite the representations stated in defendant's affiant ¶ 9 & ¶ 10, even **defendant's** exhibits show he was living in Wisconsin between 2010 and 2014 (*See* Def. Ex. 6 bottom of page 1, top of page – Cities Milwaukee, WI 2010-2013, Counties, Milwaukee, WI and at bottom of page two addresses in Milwaukee Wisconsin between March 2010 and November 2013 and Def. Ex. 7 with relatively the same information until 2014). Thus, plaintiff's claim should survive and to the extent required by this court should fall under the discovery rule as not being time-barred.

<u>Equitable tolling should apply to this case</u>

Equitable tolling "is available only in compelling circumstances which justify a departure from established procedures." *Puckett v. Tenn. Eastman Co.,* 889 F.2d 1481, 1488 (6th Cir.1989). A plaintiff bears the burden to demonstrate equity so requires. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir.2004). Equitable tolling is "appropriate where the plaintiff is actively misled by the defendant about the cause of action or is prevented from some extraordinary way from asserting his rights." *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002). The U.S. Supreme Court recently limited equitable tolling to two elements: (1) that a party has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace v. Digugerelimo,* 544 U.S. 408, 418

12

(2005). In the present case, plaintiff diligently pursued his rights by 1) disputing the debt as admitted by defendant in a phone call, 2) having an attorney notify defendant to resolve the issue (Ex.L&N), 3) sending several documents including a credit report, letter from employer with payroll record and letters from previous landlords to defendant, 4) finally obtaining a stipulation from defendant to vacate the judgment and transfer jurisdiction to Wisconsin, 5) calling defendant leaving a phone number to be reached at in May 2011, and 6) not having had any notice of the lawsuit or judgment entered against him. (Dkt. Entry # 11-12333). The extraordinary circumstance that stood in the way appears to be the fraudulent acts of the process server in creating a false document and the negligent acts of the United States of America and defendant in failing to notify plaintiff of the action. Thus, plaintiff was actively misled by the acts of defendant's agent.

The *Mooneyham* court applied equitable tolling in an FDCPA action. *Mooneyham v. GLA Collection Co., 2015 U.S. Dist. LEXIS 73494*. The case involved credit reporting with the court determining that knowledge of the statute of limitations would only be relevant after Mooneyham had received information necessary to determine he had a claim. *Id.* p. 19-20. Thus the time ran from when he received his credit report. *Id.*

<u>The doctrine of continuing violations should apply</u>

Additionally, ¶ 31 of plaintiff's complaint stated that the violations **continued** after the lawsuit was filed because writs of garnishments were issued. The court in *Langendorfer* found that in the context of a venue violation of the FDCPA, the pursuit of litigation could serve as a "continuing violation" of the statute because each and every legal action was tainted. *Langendorfer v. Kaufman*, p. 11, 2011 U.S. Dist. LEXIS 94100,

13

2011 WL 3682775 (S.D. Ohio Aug. 23, 2011). As such the actions were discrete

continuing violations of the statute that each independently tolled the statute of

limitations. *Id.* p.11-12. The *Langendoïfer* court relied upon the rational provided by an

unpublished case from the 6th Circuit *Purnell v. Arrow Financial Services, LLC*, No. 07-

1903, 2008 U.S. App. LEXIS 25488 *10 (6th Cir. December 16, 2008). *Id.* p.10.  The

same situation applies here. Plaintiff was sued in the improper venue, never served, and

when he became aware of the suit had to hire a lawyer in a distant forum to defend

himself. Each and every garnishment filed constituted a discrete separate harm that only

became an issue when the garnishment was successful. Thus, this Court should apply that

doctrine here.

## II. DEFENDANT CANNOT MEET ITS BURDEN TO PROVE ANY ALLEGED ERROR WAS BONA FIDE AS IT FAILED TO IDENTIFY THE SERIES OF STEPS IT TAKES WHEN CONTRADICTORY INFORMATION IS PRESENTED BY THE DEPARTMENT OF EDUCATION AND WHEN DEFENDANT FAILED TO COMPLY WITH DOE RULES AND REGULATIONS

Defendant first claims the bona fide error defense when it states, "Defendant

reasonably relied upon the credit report and address information provided by the United

States Department of Education, followed all appropriate procedures before filing suit,

and had no reason to suspect Wisconsin as the appropriate venue **after** the court officer

returned an affidavit of personal service in Michigan." First, the duties and standards are

not even disclosed or produced to this court. Second, the credit report and address

information contradicted each other. Third, defendant's own exhibit 3 indicates that

plaintiff called in but defendant redacted the phone number, which would likely indicate

a Wisconsin area code. Fourth, knowledge obtained after service would not apply to the

claim of a venue violation.

14

A. <u>The duties and standards have not even been produced</u>

Defendant has a contract with the United States Government to collect defaulted federal student loan debt. That contract is regulated by certain standards including but not limited to the 2009 PCA Manual and the Litigation Package Manual (Ex.P), both issued by the Department of Education. The very first page of the PCA Manual states:

> This PCA Procedures Manual is designed to <u>enhance and expound upon contractual requirements as outlined in the RFQ and the Statement of Work</u>. The Manual establishes many of the <u>day-to-day procedures and policies necessary</u> for Private Collection Agencies to <u>collect defaulted federal student loans</u> and grant overpayments under the U. S. Department of Education collections contract.
> The Manual <u>does not provide comprehensive guidance of all regulatory and contractual requirements</u>. <u>Nor does the Manual relieve private collection agencies and affiliated contractors of their obligation to comply with all of the statutory and regulatory provisions governing the statement of work</u>. In addition, <u>it does not relieve the above from compliance with all contract requirements and other statutes and guidelines (including specific processing/training manuals) that are applicable to the ED collections contract</u>. (emphasis added). (Ex. A).

Defendant has failed to produce the RFQ, Statement of Work, contract and any other guidelines (including specific processing/training manuals) that are applicable to the ED collections contract. These documents would establish the standards to be employed in collecting defaulted student loan debt and without production of these standards or at least an honest accounting of these standards, this court cannot discern what procedures were required to have been followed. Thus, defendant cannot come close to meeting its burden of persuasion if it had not even met its burden of production. In fact, defendant has not produced even one set of written procedures demonstrating that it actually *maintains* procedures designed to avoid the violation that took place. All

defendant has produced is an affidavit representing a practice employed without any other proof of how that practice is maintained to avoid the actual violation that occurred.

<u>Defendant cannot show maintenance of procedures reasonably adapted to avoid the violations from occurring</u>

Bona fide error is found under 15 U.S.C. 1692k(c):

> "[a] debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."
> The Act also states that none of its provisions imposing liability shall apply to "any act done or omitted in good faith in conformity with any advisory opinion of the [Federal Trade] Commission." § 1692k(e).

Defendant cannot meet its burden because it cannot show that its error was either 1) bona fide or 2) that it maintained procedures that were 3) reasonably adapted to avoid any such error. As stated by the U.S. Supreme Court, the dictionary defines "procedure" as "a series of steps followed in a regular orderly definite way." *Jerman v. Carlisle, McNellie, Rini, Kramer,* 130 S. Ct. 1605, 1614 (U.S. 2010), citing *Webster's Third New International Dictionary* 1807(1976). The Court further stated that the, "statutory phrase is more naturally read to apply to processes that have mechanical or other such "regular orderly" steps to avoid mistakes—for instance, the kind of internal controls a debt collector might adopt to ensure its employees do not communicate with consumers at the wrong time of day, § 1692c(a)(1), or make false representations as to the amount of a debt, § 1692e (2)." *Id.*

Thus, defendant must prove that it had regular orderly steps or internal controls available to its employees to avoid the mistake(s). Here, the Court's inquiry should be

whether Defendant *maintained* procedures that were reasonably adapted to avoid 1) suing

plaintiff in the wrong venue, 2) filing a writ of garnishment in the improper venue, 3) filing

a document representing plaintiff had actually been served when he hadn't, 3) filing a writ

of garnishment against plaintiff when no personal jurisdiction was acquired, and 4) failing to

suspend collection activity within 5 days of a complaint received.

<u>Inconsistent data and data not properly verified or</u>
<u>documented should have caused defendant to inquire further</u>

The evidence will show that there were several separate and distinct reasons why

defendant made the wrong choice in choosing to file in the improper venue and in failing

to identify plaintiff's primary name.

First, defendant failed to review the address data in the CBR and compare it to the

address data in the CCLR. The NCO report ("CBR") <u>did not</u> confirm the Plainfield

address as a *current* address as represented in defendant's affidavit (Def. Ex. 1). A

careful review of Exhibit 1 of Defendant's Motion reveals that the NCO reported a "New

Current Address" in Tempe Arizona as of 10/08 and listing the Plainfield address as

"Previous Address Date 04/06". (*See* pg. 1 of NCO report, Def. Exhibit 1). Additionally,

page 2 of the NCO report indicates another address in Arizona associated with plaintiff.

(*See* pg. 2 of NCO report, Def. Exhibit 1). Thus, the data was not consistent and

defendant should have been on notice that there was something wrong at least one set of

that data.

Comparing the NCO report data with the CCLR report data should have caused

any reasonable debt collector to inquire as to why one report represented Mr. Turnbull

still owned property at Plainfield address (when in reality only his father and mother

jointly did) but another set of data indicated that he had a new current address in another

17

state across the country. Had defendant simply conducted a location search it would have discovered that the property on Plainfield was owned by a person with a different name. namely plaintiff's father <u>and</u> mother. (Ex.G & H).

Second, defendant violated rules of the Department of Education in not ensuring that the home address verification within the last 30 days matched both the L101 screen and the CBR. (Ex.P, pg. 3, #3). This standard is governed by the rules and regulations issued by the Department of Education (Ex.O p.230). Whether that was defendant's fault or the creditor's fault, defendant should have known of this requirement to even become a candidate for litigation. (Ex.P,pg.3). Does the DOE require a PCA to stop collection in these circumstances? We cannot know if defendant has not produced all of the documents that outline the standards to be followed.

In fact, defendant doesn't even bother to file the screen shots (e.g. L101) that were or should have been provided in the litigation package. (Ex.P, pg. 4, #6). Not only did the home address not match but the primary name on the CBR did not match the primary name on the CCLR. Something that easily should have been discovered by simply comparing that information with the information on the promissory note. Plaintiff and his father are listed on that note and plaintiff's father lived at the Plainfield address in the 1990's. Finally, the litigation package failed to include mandatory employment verification information which also should have caused defendant a duty to inquire. (Def. Ex. 1, p.3¶20).

Other material information is also contradicted as well. For example, the CCLR indicates plaintiff's name as "Robert A. Turnbull" when the NCO report indicates the primary name of plaintiff as "Robert A. Turnbull 3". Notably the NCO report indicates

18

two other alias' used, including "Robert A. Turnbull" and "Robert I. Turnbull". Because the CCLR data name did not match the CBR name, this fact also should have given defendant pause. Any search on plaintiff would have revealed (just as both address searches conducted in 2013 and 2014, Def. Ex. 6 and Ex. 7) that his other two alias' did not match to the name "Robert A. Turnbull Jr."

Additionally, the DOE's Litigation Manual mandates that PCA's check for any errors and correct them prior to submission to the litigation unit. (Ex.P,p.62). The fact that the name and address of the father on the promissory note matched the address of the son should have been discovered.

## The call from plaintiff gave rise to new information

Finally, defendant produces the call log (Def. Ex. 3) but fails to admit it redacted the phone number. The phone number left by Mr. Turnbull was redacted and the File No. / Name is also redacted. Why this data as well as other data was redacted (social media accounts on CBR, phone numbers, year of birth, etc.) appears to be suspicious. This data would very likely have informed defendant that Mr. Turnbull was calling from a Wisconsin area code. Thus, the question becomes what duties does a student loan debt collector have to take in response to receipt of potential new location information.

The fact that Mr. Turnbull was calling from Wisconsin might have caused any reasonable student loan debt collector to either 1) not file a lawsuit, 2) conduct a search on that number of plaintiff's name in Wisconsin, 3) conduct additional address searches on plaintiff, or 4) request more information from the creditor. Perhaps defendant had additional choices or options available not known by plaintiff. Additionally, Exhibit 3 reveals Defendant had about fourteen days between the call and the date of filing to

19

prevent the problem. Were any steps taken during this two-week span of time other than sending a request to the USPS with the wrong name listed?

Defendant has further failed to identify the procedures it must follow when calls like this are received. New location or address information is supposed to be documented by the PCA. (Ex.0, p.26-27). Additionally, this court should inquire as to the relevance of the notation of 5/24 by "TZLM" "2:40" found on Def. Ex. 3. If someone called Mr. Turnbull's phone number, then the affidavit should have been supplemented to determine what was said or heard by that person. Were any searches run on that new phone number? Why was only one call back made to plaintiff when the DOE requires that, "All available ED collection efforts should be exhausted prior to preparing the case for litigation." (Ex. P, p.3,¶13). Again, what duties does defendant have with regard to these special contracts with the DOE?

The PCA manual does contain mandatory processes a debt collector must follow when it receives information of a new address or new borrower contact information. (Ex. O, p.26-27). If a PCA receives a "new" address from ED in their address extract file but determines that the address on their system is the correct address, then the PCA must update the DMCS address back to the PCA "valid" address. *Id.* PCAs should ensure that their system, as well as DMCS, has the most current, correct borrower contact information. *Id.* If the PCA contacts the borrower at an address other than the last address known to ED, the PCA must reissue its first demand letter to the borrower at the new address. *Id.* Upon receipt of evidence that a borrower's current address of record is not valid, the PCA will change the address status field on the L103 screen to "U". *Id.*

Based upon these standards it seems quite plausible that defendant was required to have reissued its demand letter (Def. Ex. 4) when it received the phone call from plaintiff in May 2011 from a Wisconsin area code.

Additionally, this court should be suspicious of the constant changes of address within the proofs of service of the judgment, lien and subsequent writs of garnishment. Defendant issued three garnishments and filed one lien without explanation as to why the addresses changed. The default judgment (Dkt. Entry #8), the first garnishment (Dkt. entry #10) and the lien (Ex.C) all were all sent to the Charter Oaks address supplied by the process server. The second garnishment (Dkt. entry #13&14) was mysteriously sent to the address in Arizona. The third garnishment (Dkt. Entry #17&18) was then switched back to the Plainfield address.

What caused defendant to switch addresses on the second garnishment? Did the Charter Oaks letters bounce back to defendant? Defendant has an obligation to keep correspondence it receives. (Ex.O, p.33). Defendant has not produced any of this information or discussed this in the affidavit. Taking into account the information within the email (Ex.N) why then did defendant choose to send the final garnishment to the Plainfield address? Defendant represents it knew, as of the date of service on June 6, 2011, that plaintiff's father owned that property. Was the letter returned to defendant?

Furthermore, defendant obtained the promissory note when it received the litigation package. That note clearly shows plaintiff's father's name was almost exactly the same as plaintiff and shows the father's address at Plainfield in Flint, Michigan. (Dkt. Entry #1, 11-12333). Thus, any person at defendant's place of business that is charged with reviewing the referral information should have seen this potential issue based upon

these documents alone. Simply because plaintiff asserted that defendant mixed up the father with the son doesn't mean plaintiff has admitted that defendant can use bona fide error as a defense unless procedures are shown that are maintained and reasonably adapted to avoid the violation from occurring.

<u>Additional duties owed by defendant</u>

A PCA has duties when a possible third-party is contacted. (Ex.O, p.29-30). The PCA manual indicates that if a PCA contacts a possible third party, the PCA should verify several items including the person's date of birth and determine if a different social security number is being used. *Id.* If a PCA determines that a third party was contacted, and the third party information was updated on the government information system, the PCA should transmit information to that system to overwrite the third party information. *Id.* This would have corrected the entire mess and had this been done prior to filing suit, would have resulted in no harm to plaintiff.

Defendant's email clearly states that Mr. Turnbull's father was contacted and told them that plaintiff did not live there. Upon learning of this, defendant was obligated to take steps to overwrite the third party information from the DMCS. If defendant had done this, then plaintiff would have learned of the action within a few weeks of having been sued. The statute of limitations would not be an issue in that type of FDCPA case.

<u>Regulation of Collection Practices Act MCL § 445.251</u>

Defendant maintains its acts were not willful or malicious. However, defendant failed to supply the duties, statement of work, contract, RFQ or other regulations that it must comply with. Thus, it is impossible for this court to determine whether defendant maintained procedures reasonably adapted to avoid the violations. With so many

22

potential violations having occurred in this matter it is very likely a court would decide that defendant's acts were wilful. The Michigan legislature did not choose to define the word 'wilful' thus the dictionary definition must be used. According to Black's Law Dictionary, willful means "intentional and voluntary but not necessarily malicious." (Ex. Q). Defendant appears to have violated the duties as they appear in the PCA Manual and Litigation Manual. Because the actions that violated the law were intentional and because the actions were made voluntarily, plaintiff has plausible claims.

<u>Motion to Amend Complaint and File First Amended Complaint</u>

Additionally, plaintiff has attached a first amended complaint to his response. (Ex. R). In addition to claim on the writ being filed in the wrong venue, plaintiff also seeks leave to amend as plaintiff has discovered a duty by defendant to suspend collection activity within five calendar days of a dispute. (Ex.O, p.31). Because it failed to suspend collection activity by not releasing the garnishment and returning the funds within that time period, plaintiff has additional claims. The underlying issue related to the holding of garnished funds was pled in Plaintiff's Complaint ¶31-33, & ¶35. Thus, the issue was previously raised. A court can take judicial notice of pleadings filed and a court can consider matters of public record in determining a 12(b)(6) motion. *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir. 1997).

In the present case, defendant admits that plaintiff called defendant's firm on July 20, 2015 and told them he had not been served (Def. Br. pg. 3) This constitutes a verbal complaint. Additionally, defendant admits it received a complaint from plaintiff on August 6, 2015. (*Id.*, Ex.L) This constitutes a written complaint. Despite two complaints

23

defendant still failed to release the garnishment until August 25, 2015, nineteen days later. (Dkt. Entry #20, 11-1233-dof).

Because it failed to suspend collection activity by not, within the applicable time frame, releasing the garnishment and returning the funds within that time period defendant violated the Fair Debt Collection Practices Act. It is deceptive to refuse to suspend collection activity when you are duty bound by law to do so. Releasing the garnishment earlier would have, at a minimum, relieved plaintiff of being forced to pay for a debt he didn't even have a chance to defend against. Forcing plaintiff to be garnished without a fair opportunity to defend himself offends due process rights. Thus, plaintiff has additional plausible claims that are not futile. Consequently, plaintiff requests this court allow him to file the first amended complaint attached.

### CONCLUSION

Whether plaintiff was served or not appears to be an issue of material fact in dispute. Additionally, the discovery rule, equitable tolling and the continuing violation rule should apply to this case because plaintiff was never served and only found out about the student loan judgment in June 2015. Defendant has failed to meet its burden on the bona fide error issue because it has failed to even supply this court mandatory documents that control in federal student loan debt collection cases. Defendant has not shown the series of steps it took to deal with contradictory information provided by the DOE. Additionally, defendant's evidence establishes conclusively that defendant's affiant was not accurate because the TLO searches did clearly show the Wisconsin addresses and a different owner of the Plainfield property. Finally, defendant has no defense to failing to suspend collection activity with five days of notice of plaintiff's dispute. Consequently, defendant's arguments

have little merit and this Court should not be persuaded by them. For the reasons stated above, plaintiff requests that this Court deny defendant the requested relief in its entirety.

**WHEREFORE** Plaintiff requests leave to amend its Complaint and file the First Amended Complaint and requests that Defendants Motion to Dismiss or Motion for Summary Judgment be denied in its entirety and Plaintiff be awarded costs and attorney fees.

Dated: August 31, 2016

/s/Andrew L. Campbell
Andrew L. Campbell
Attorney for Plaintiff
1000 Beach St, Suite B
Flint, MI 48502
(810) 232-4344
(P64391)

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2016, the foregoing documents were filed with the Clerk of the Court using the Court's ECF filing system which will send notice of said filing to the following:

O'REILLY RANCILIO P.C.
Craig S. Schoenherr, Sr. (P32245)
Eric C. Turnbull (P76382)
Attorneys for Defendant
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
(586) 726-1000
cschoenherr@orlaw.com
eturnbull@orlaw.com

/s/Andrew L. Campbell
Andrew L. Campbell
Attorney for Plaintiff
1000 Beach St, Suite B
Flint, MI 48502
(810) 232-4344
(P64391)

25