UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT A. TURNBULL

     **Plaintiff,**               **CIVIL ACTION NO. 16-11971**

     **v.**

**O'REILLY RANCILIO, P.C.**      **MAGISTRATE JUDGE MONA K. MAJZOUB**

     **Defendant.**
_____/

**OPINION AND ORDER GRANTING IN PART**
**DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**
**OR ALTERNATIVELY FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(c)**

This matter is before the Court on Defendant O'Reilly Rancilio, P.C.'s Motion to Dismiss Pursuant to Rule 12(b)(6) or Alternatively for Summary Judgment Pursuant to Rule 56(c). (Docket no. 8.) Plaintiff Robert Turnbull filed a Response (docket no. 13), and Defendant filed a Reply (docket no. 14). With consent of the parties, this case has been referred to the undersigned for all proceedings in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket no. 11.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and is now ready to rule.

I.      **Background**

This case arises from Defendant's efforts to collect on a student loan debt that Plaintiff incurred in Illinois in 1991. (Docket no. 1-1 in Case No. 11-12333, E.D. Mich.) The Fair Debt Collection Practices Act requires, among other things, that "[a]ny debt collector who brings any legal action on a debt against a consumer shall . . . bring such action only in the judicial district . . . (A) in which such consumer signed the contract sued upon; or (B) in which such consumer

resides at the commencement of the action." 15 U.S.C. § 1692i. The Act further prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10).

Defendant was hired by the United States Department of Justice[1] to sue Plaintiff to attempt to collect on the debt, and on March 10, 2011, Defendant received a file with Plaintiff's information from the DOJ. The file contained a "Claims Collection Litigation Report," which states that the debtor's name and address are "Robert A. Turnbull, 2802 Plainfield Ave., Flint, MI 48506." (Docket no. 8-1 at 2.)

It is worth pointing out that Plaintiff's father is Robert Turnbull, Jr., and Plaintiff is Robert Turnbull, III. Plaintiff's mother and father own the Flint property, and Plaintiff has lived there in the past.

The DOJ file also contained a Credit Bureau Report, which was generated using Plaintiff's Social Security Number. (Docket no. 8-1 at 9.) The Credit Bureau Report identifies the debtor (Plaintiff) as "Robert A. Turnbull," residing at the Flint address.[2] (*Id.*) Defendant sent a "debt validation letter" to Plaintiff at the Flint address on April 14, 2011, indicating that if Plaintiff did not pay the debt in full, Defendant would "exercise all legal remedies." (Docket no. 8-2.) Defendant contends that he was not residing at the Flint address at that time, but that he found out about the letter because his father contacted him. Regardless, after learning of Defendant's intent to collect the debt, Plaintiff contacted Defendant's office, but the parties never agreed to any repayment terms or other resolution. Plaintiff also did not indicate that he

---

[1] The United States Department of Education is the lender.

[2] Further down the page, the Credit Bureau Report lists a "New Current Address, Date 10/08" as "1701 N Ventura LN, Tempe, AZ 85281." (Docket no. 8-1 at 9.)

did not live at the Flint address. Shortly thereafter, on May 26, 2011, Defendant filed suit against Plaintiff in the Eastern District of Michigan, Case No. 11-12333.

The day after filing suit, on May 27, 2011, Defendant filed a "request for change of address or boxholder information" on "Robert A. Turnbull," identifying him as residing at the Flint address. (Docket no. 8-4.) The Post Office indicated that there was no change of address form on file for that individual. (*Id.*) Defendant therefore hired a process server, Mr. Dustin Miller, and instructed him to serve Plaintiff at the Flint address. According to Defendant, when Mr. Miller appeared at the Flint address, Plaintiff's father informed Mr. Miller that Plaintiff had moved to 10311 Charter Oaks Drive, in nearby Davison, Michigan. (Docket no. 8 at 11.) Mr. Miller filed an affidavit claiming that he was able to personally serve Mr. Miller at the Davison address on June 6, 2011. (Docket no. 8-5.)

Plaintiff never responded to the complaint, and a default judgment was entered on June 30, 2011. (Case No. 11-12333, docket no. 8.) On July 21, 2011, Defendant requested, and received, a Writ of Continuing Garnishment as to Plaintiff and garnishee Michigan Department of Treasury. (*Id.*, docket no. 12.) Defendant mailed copies of the garnishment documents to Plaintiff at the Davison address, but did not receive a response. Three years later, after performing "skip trace searches and TLO searches," Defendant claims that it discovered a "potential new address in Arizona and employment for Sears Roebuck and Co." (Docket no. 8 at 11.) Defendant therefore requested, and received, a second writ of garnishment in Case No. 11-12333, on October 10, 2014. Defendant attempted to serve Plaintiff with that garnishment at the Arizona address, but the garnishment was sent back marked "return to sender." (Docket no. 8 at 11.) And, the garnishment itself apparently failed because Plaintiff no longer worked at Sears. (Case No. 11-12333, docket no. 16.)

Defendant claims it ran another "skip trace search" in June 2015, and discovered that Plaintiff was employed by TruGreen Limited Partnership. (Docket no. 8 at 11–12.) Therefore, on June 9, 2015, Defendant requested and received a garnishment in Case No. 11-12333 as to Plaintiff and garnishee TruGreen Limited Partnership. (Case No. 11-12333, docket no. 18.) Defendant "served" this garnishment on Plaintiff by mailing it to him at the Flint address on June 29. (*Id.*, docket no. 19.) Plaintiff claims his father received the garnishment paperwork in the mail and contacted Plaintiff, who in turn contacted Defendant and informed Defendant that he had been a resident of Wisconsin since 2009, and had never been served in the lawsuit which led to the garnishment. On August 25, 2015, after counsel for Plaintiff sent Defendant a letter threatening a lawsuit, Defendant agreed to release the garnishment. (*Id.*, docket no. 20.)

On June 1, 2016, Plaintiff filed suit against Defendant, alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692i, 1692e(10), and the Michigan Regulation of Collection Practices Act (MRCPA), M.C.L. § 445.251(a), (e), and (f)(ii). (Docket no. 1.) Shortly thereafter, the parties agreed to set aside the default judgment in Case No. 11-12333 and transfer that case to the Eastern District of Wisconsin. (Case No. 11-12333, docket nos. 22, 25.) The parties have since settled that case, with Plaintiff agreeing to pay $1,453.95 in principal and $2,249.38 in interest on the student loan. (*United States v. Turnbull*, Case No. 16-00829, docket no. 43 (E.D. Wis. Jan. 10, 2017).)

In its Motion, Defendant argues that Plaintiff's claims under the FDCPA and the MRCPA should be dismissed based on the statute of limitations or because Defendant's decision to file the 2011 collection suit against Plaintiff in Michigan was the result of a bona fide error. Plaintiff argues that the statute of limitations did not begin to run until he found out about the collection lawsuit, which, he claims, did not occur until 2015, when his father contacted him about the

garnishment.   Plaintiff also argues that Defendant failed to follow proper procedures to investigate Plaintiff's true address before filing suit, and therefore cannot rely on the bona fide error defense.   Finally, Plaintiff argues that, in requesting and receiving the garnishments, Defendant misrepresented that it had served Plaintiff in the collection suit.

## II.      Governing Law

### 1.      Motion to Dismiss Standard

When deciding a motion under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."   *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  The plaintiff must provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."   *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).   But this statement "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   The plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action;" instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   This "facial plausibility" is required to "unlock the doors of discovery."   *Id.*   To make this determination, the *Iqbal* Court set out the following two-step analysis:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

2. *Summary Judgment Standard*

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly

supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

## III.   Analysis

### 1.   *Statute of Limitations*

Defendant argues that Plaintiff's FDCPA claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's Complaint was filed nearly five years after Plaintiff was served in the 2011 collection suit.  (Docket no. 8 at 16–17.)

The FDCPA provides that "[a]n action to enforce liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  The Sixth Circuit has not addressed when a cause of action accrues for violation of the venue provision of the FDCPA (15 U.S.C. § 1692i, quoted above); that is, whether the statute of limitations begins to run on the date the (improperly located) suit is filed, or on the date the defendant (the would-be FDCPA plaintiff) is notified of the suit.[3]  Both parties cite *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 443 (5th Cir. 2013), in which the Fifth Circuit held that a violation of the venue provision "does not occur until a debtor is provided notice of

---

[3] The Court notes that the Sixth Circuit addressed when an FDCPA claim accrues for purposes of inclusion in a bankruptcy estate in *Tyler v. DH Capital Mgmt.*, 736 F.3d 455 (6th Cir. 2013), holding that the claim accrues at the time of the filing of the complaint.  In that case, however, the Sixth Circuit expressly limited its holding to bankruptcy purposes, stating that "accrual for the purposes of [bankruptcy claims] is different from accrual for statute-of-limitations purposes."  *Id.* at 463.  And, even for bankruptcy purposes, the Sixth Circuit noted that the timing of claim accrual was "a close question."  *Id.* at 463.

the debt-collection suit;" in that case, the date the debtor was served with the summons and complaint.[4]   The Fifth Circuit reasoned that the "FDCPA's remedial nature compels the conclusion that a violation includes both filing and notice," and relied, in part, on "the principle that a claim does not accrue for purposes of a statute of limitations until a plaintiff experiences an actual injury." *Id.* at 445–46.

The Court agrees with the reasoning and holding of *Serna*, and finds that the statute of limitations regarding Plaintiff's claims arising from the 2011 collection lawsuit did not begin to run in this case until Plaintiff received notice of that lawsuit. *See also Landendorfer v. Kaufman*, No. 1:10-CV-00797, 2011 WL 3682775, at *3 (S.D. Ohio Aug. 23, 2011) (holding that the FDCPA begins to run at the time of service, noting that "[s]uch conclusion comports with the simple principle that due process requires notice").

Here, there is a question of fact regarding whether Plaintiff had notice of the suit prior to June 29, 2015, when Defendant mailed a copy of the TruGreen garnishment to the Flint address and Plaintiff's father contacted Plaintiff about the lawsuit.  Defendant presents an affidavit from its process server, Mr. Dustin Miller, which states that Plaintiff was personally served at the Davison address on June 6, 2011.  (Docket no. 8-5.)  Plaintiff disputes the veracity of the affidavit.  He presents a letter from an employer in Wisconsin stating that Plaintiff was employed from March 1, 2010 to October 5, 2012, and a paystub showing that Plaintiff worked approximately eight hours on June 6, 2011.  Plaintiff also submits a sworn affidavit stating that he was working in Wisconsin "at the time [he] was supposedly served in Davison."  (Docket no. 13-6 at 2.)  Plaintiff admits that he once lived at the Davison address, but states that he moved out in 2009, and never went back.  (*Id.* at 3.)  He attaches a lease, which provides a "move out

---

[4] Defendant does not appear to disagree with the reasoning of this case, only arguing that Plaintiff was in fact served in 2011.

date" of November 30, 2009.  (Docket no. 13-9 at 2.)  While the process server's affidavit is strong proof that Plaintiff was served, Defendant presents enough proof to create a question of fact regarding whether Plaintiff was served.

Because there is a question of fact regarding whether Plaintiff was served in June 2011, and therefore whether Plaintiff had notice of the suit prior to June 29, 2015, neither summary judgment under Rule 56(c) nor dismissal under Rule 12(b)(6) is appropriate on statute of limitations grounds.

### 2.    *Bona fide error defense*

Defendant is, however, entitled to summary judgment on a number of Plaintiff's claims pursuant to 15 U.S.C. § 1692k(c), which provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debtor collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error."[5]

Plaintiff's Complaint centers on his contention that Defendant violated the FDCPA, 15 U.S.C. § 1692i(a)(2)(A)–(B), by filing suit against Plaintiff in the Eastern District of Michigan at a time when Plaintiff was allegedly residing in Wisconsin.  It is undisputed that Defendant's decision to file the 2011 collection suit in the Eastern District of Michigan was based on the fact that the file from the DOJ identified Plaintiff as living in Flint, and the fact that Plaintiff contacted Defendant in response to the debt validation letter, which Defendant sent to the Flint address.  At that point, Defendant had no reason to believe that Plaintiff's address of record with the DOJ was not correct.  By filing the collection suit in the Eastern District of Michigan, Defendant clearly did not intend to force Plaintiff to defend an action outside of the judicial

---

[5] Defendant does not seek a Rule 12(b)(6) dismissal based on the bona fide error defense.  (Docket no. 8 at 5.)

district in which Plaintiff resided.  And, the day after filing suit, Defendant ran a postal service change of address check, which showed that "Robert A. Turnbull," had no change of address order on file.  (Docket no. 8-4.)  The Court finds this is sufficient.[6]

Plaintiff makes much of the fact that Defendant did not follow certain procedures "including but not limited to the 2009 PCA Manual and the Litigation Package Manual" issued by the Department of Education.  (*See* docket no. 13 at 23–32.)  However, Plaintiff presents no binding or persuasive authority to show that Defendant was actually required to follow these procedures.  Plaintiff cites no provision of the FDCPA which so requires, and other courts have found that debt collectors were entitled to rely on the bona fide error defense at the summary judgment stage where they took preventative measures similar to Defendant's.  *See Nichols v. Byrd*, 435 F. Supp. 2d 1101, 1109 (D. Nev. 2006) ("[W]e find that [d]efendant's review of address correction forms is evidence of a 'reasonable preventative procedure.'  In addition, Defendant's review of CSN's records indicated that the Plaintiffs had responded to letters sent by CSN to a Sparks address, which in itself supplied Defendant with a basis for believing the Sparks address to be accurate." (citation omitted)).  Any claims related to whether the filing of the 2011 collection suit violated the venue provision of the FDCPA will therefore be dismissed.

All of Plaintiff's FDCPA claims based on Defendant's alleged "false representation or deceptive means" will also be dismissed.  As the Court interprets Plaintiff's Complaint, most of these claims depend on Plaintiff's assertion that the process server's affidavit of personal service is false.  (*See, e.g.*, docket no. 1, ¶¶ 31, 34.)  The Court finds that, under the circumstances of this case, it was appropriate for Defendant to rely on this affidavit and that therefore any

---

[6] The Court also notes that Plaintiff does not specifically dispute Defendant's assertion that the process server went to the Flint address, and was informed by Plaintiff's father that Plaintiff had moved to the Davison address, which is also located within the Eastern District of Michigan.

"misrepresentations" Defendant made were unintentional and subject to the bona fide error defense.

Plaintiff also alleges that requesting and receiving the garnishments constitute actionable false representations under the FDCPA because the garnishments are an assertion of Defendant's "right to obtain money from plaintiff in a proceeding which it had no jurisdiction . . . because venue was improper."  (Docket no. 1, ¶ 34.)  As discussed above, Defendant reasonably believed that venue was proper in the 2011 collection suit.  Therefore, the Court finds that any "misrepresentation" regarding Defendant's right to garnish Plaintiff's wages as a result of the 2011 default judgment being obtained in the incorrect venue was the result of a bona fide error.

In Plaintiff's proposed amended complaint (docket no. 13-18), however, he asserts amended claims relating to the garnishments; specifically, he asserts that the garnishments themselves violate the venue provision of the FDCPA (15 U.S.C. § 1692i(a)(2)(A)–(B)), because Plaintiff was living in Wisconsin at the time the garnishments were issued.  Without ruling on Plaintiff's request to amend his Complaint (because it is procedurally improper[7] and Defendant has not had an opportunity to properly respond to it), the Court notes that these amended claims may not be subject to summary dismissal or dismissal on Rule 12(b)(6) grounds.[8]  The Court will therefore order Plaintiff to file a proper motion to amend his Complaint which is consistent with this opinion and order.

       *3.     State law claims*

---

[7] E.D. Mich. ECF Policies and Procedures Rule 5(e) provides that a "response or reply to a motion must not be combined with a counter-motion."

[8] For one, Defendant served the 2014 garnishment on Plaintiff at his address in Arizona, which shows that even Defendant did not believe that Plaintiff was residing in the Eastern District of Michigan when Defendant requested the garnishment and the garnishment was issued by the court in Case No. 11-12333.

Plaintiff also asserts that Defendant violated the Michigan Regulation of Collection Practices Act by (1) "filing a complaint, proof of service and garnishments against plaintiff that were invalid by operation of law," in violation of M.C.L. § 445.252(a); (2) that Defendant "misrepresented . . . the legal rights of the creditor and debtor," in violation of subsection (f)(ii) of the MRCPA when "Defendant failed to immediately return garnished funds and failed to immediately agree to vacate the judgment" after being informed that Plaintiff resided in Wisconsin in 2011 when the collection lawsuit was filed; and (3) that Defendant "made inaccurate, misleading, untrue, or deceptive statements or claims in communications to collect a debt when it filed a lawsuit, proof of service and garnishments upon plaintiff," in violation of subsection (e) of the MRCPA.   Plaintiff asserts that each of these violations was "willful," entitling him to payments of $500.00 per violation under M.C.L. § 445.256.

The relevant subsections of the MRCPA provide:

A regulated person [creditor] shall not commit 1 or more of the following acts:

(a) Communicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney or credit bureau . . . .
. . . .

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt.

(f) Misrepresenting in a communication with a debtor 1 or more of the following:
. . . .
      (ii) The legal rights of the creditor or debtor.

M.C.L. 445.252(a), (e), (f)(ii).

In its Motion, Defendant argues that it is entitled to Rule 12(b)(6) dismissal or summary judgment on Plaintiff's state law claims "for all the reasons stated above."  (Docket no. 8 at 24.) The "reasons stated above" include the statute of limitations and the bona fide error defense.  As

discussed earlier in this opinion, the Court concludes there is a question of fact regarding whether Plaintiff was served or otherwise had notice of the 2011 collection lawsuit, and therefore whether the statute of limitations bars Plaintiff's claims.[9]  And, the Sixth Circuit has held that the MCRPA is a strict liability statute which does not provide a "bona-fide error" defense.  *Gamby v. Equifax Information Servs. LLC*, 462 Fed. App'x 552, 556-57 (6th Cir. 2012).  The Court concludes that Defendant has therefore not shown that it is entitled to dismissal on these grounds, and Defendant's Motion should be denied with regard to Plaintiff's state law claims.

4.      *Fees and Costs*

Defendant asks the Court to award it costs and attorney fees incurred in defending this action pursuant to 15 U.S.C. § 1692k(a)(3) because, Defendant contends, the action was filed in bad faith.  It is not readily apparent that Plaintiff's claims lack evidentiary support or that they were brought for the purpose of harassing Defendant.  The Court will deny the request.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) or Alternatively for Summary Judgment Pursuant to Rule 56(c) [docket no. 8] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that all FDCPA claims as asserted in Plaintiff's Complaint are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff shall file a motion to amend his Complaint, on or before April 5, 2017, which includes only the proposed amended garnishment claims (asserting that the garnishments violate the venue provisions of the FDCPA) and the surviving state law claims.  If Plaintiff fails to comply with this Order by April 5, the Court will dismiss the entire case because there will be no remaining federal law claims and the Court will decline to exercise jurisdiction over the state law claims.  *See Musson Theatrical, Inc. v. Fed. Express*

---

[9] Defendant also does not identify the statute of limitations for MRCPA claims.

*Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . .").

   **IT IS FURTHER ORDERED** that Defendant's request for costs and attorney fees incurred in defending this action is **DENIED**.

Dated: March 14, 2017          s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

   I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date, and upon Nest Labs, Inc., at 3400 Hillview Avenue, Palo Alto, California, 94304.

Dated:  March 14, 2017          s/ Lisa C. Bartlett
                                Case Manager

14